UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **ROBERT KANAS,** | **2:25-CV-11657-TGB-APP** |
| Plaintiff, | |
| vs. | HON. TERRENCE G. BERG |
| **G. GHANNAM DDS, P.C. et al.,** | **ORDER DENYING DEFENDANTS' MOTION TO DISMISS (ECF NO. 8)** |
| Defendants. | |

Plaintiff Robert Kanas brings this action against Defendants G. Ghannam DDS, PC., doing business as Campbell Dental, and Allenwood Dental, PLLC ("Campbell" and "Allenwood," respectively), alleging the following counts: (I) discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213; (II) discrimination in violation of Michigan's Persons with Disabilities Civil Rights Act (PDCRA), M.C.L. §§ 37.1101–37.1607; (III) retaliation in violation of the ADA; and (IV) retaliation in violation of the PDCRA. ECF No. 1. Defendants have filed a motion to dismiss. ECF No. 8. For the following reasons, the Court **DENIES** Defendants' motion.

## I.  BACKGROUND

### A.    Factual Background

In considering Defendants' motion to dismiss, we accept as true the following allegations, which are drawn from Plaintiff's complaint.

Plaintiff Dr. Robert Kanas underwent prostate cancer surgery on May 5, 2020. ECF No. 1, ¶ 46. "From July 2020 through November 2023, Kanas's Prostate-Specific Antigen … levels gradually increased, indicating a biochemical recurrence of prostate cancer." *Id.* ¶ 47.

On January 3, 2022, Plaintiff started working as an employee at Allenwood and Campbell. *Id.* ¶¶ 3, 16, 48.

On December 19, 2023, Plaintiff "informed Dr. Robert Ghannam, the owner, about his need for an accommodation related to cancer treatment." *Id.* ¶ 52. On January 9, 2024, Plaintiff "received a text message from Lara Moya, a dental hygienist and Dr. Ghannem's wife, instructing him to stop treating patients with metal brackets and to refer them to an external office." *Id.* ¶ 53.

On January 11, 2024, Plaintiff "consulted with a radiation oncologist." *Id.* ¶ 54. On the same day, Plaintiff "was informed by dental assistants, in the presence of a patient, that he should no longer offer traditional brackets." *Id.* ¶ 55.

On January 11, 2024, Plaintiff "texted Lara Moya about the new policy and requested a discussion with Dr. Ghannam." *Id.* ¶ 56. On the same day, Plaintiff "emailed Campbell Dental outlining his objections to the new policy and requesting a contract renegotiation." *Id.* ¶ 57.

On January 12, 2024 through January 13, 2024, Plaintiff "texted Lara Moya and emailed Campbell Dental expressing concerns about the

new policy, its impact on his earning potential, and the absence of a proper chart audit system." *Id.* ¶ 58.

In mid-January 2024, Plaintiff "discussed Lara Moya's text message with Angie Hernandez, the office manager at Campbell." *Id.* ¶ 59. "Hernandez expressed confusion regarding the message, noting good compliance among Kanas's patients." *Id.* ¶ 60.

On January 17, 2024, Plaintiff "met with Lara Moya to discuss the text message and the new policy." *Id.* ¶ 61. On January 18, 2024, Plaintiff "discussed the new policy and his medical condition with Dr. Ghannam." *Id.* ¶ 62.

From January 23, 2024 to March 20, 2024, Plaintiff "completed 39 radiation treatment sessions." *Id.* ¶ 63.

Plaintiff "did not miss a single day of work due to this cancer treatment." *Id.* ¶ 64.

On January 31, 2024, Plaintiff "met with Dr. Ghannam to discuss changes to his contract." *Id.* ¶ 66.

In March 2024, "Dr. Brandon Thompson, a non-disabled orthodontist, began working at Campbell Dental and Allenwood Dental, performing both bracket and aligner orthodontics." *Id.* ¶ 67. On March 7, 2024, Plaintiff's "employment was terminated by Dr. Ghannam and Lara Moya." *Id.* ¶ 68. "Dr. Ghannam and Lara Moya cited Kanas's complaints about a dental assistant reading patient history and his complaints about equipment as the reason for his termination." *Id.* ¶ 69. On March 8, 2024,

Plaintiff "received a termination letter, effective 45 days later, indicating he would be compensated at his regular rate during that period." *Id.* ¶ 70.

"On November 8, 2024, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission [('EEOC')]." *Id.* ¶ 42.[1] "On March 21, 2025, the EEOC issued Plaintiff a Dismissal and Notice of Right to Sue against Defendants with regard to this matter." *Id.* ¶ 43.

### B.   November 8, 2024 EEOC Charge of Discrimination

Because the content of the November 8, 2024 EEOC Charge of Discrimination, is the subject of Defendants' motion to dismiss, ECF No. 8, the Court reviews the details of this document, of which the Court may take judicial notice, *see Kovac*, 930 F. Supp. 2d at 862–63, below.

The Charge of Discrimination reflects that "Campbell Dental" was listed as the "Employer" who "discriminated against" Plaintiff. ECF No. 11, PageID.159. In response to the query "Why you believe you were discriminated against?" Plaintiff selected "Disability." *Id.* Plaintiff did *not* select "Retaliation." *Id.*

In the narrative section, Plaintiff made following statements

---

[1] In another section of the complaint, Plaintiff alleges that he "filed a charge of discrimination with the EEOC" on August 16, 2024. *Id.* ¶ 71. However, the EEOC charge, of which the Court may take judicial notice, *see Kovac v. Superior Dairy, Inc.*, 930 F. Supp. 2d 857, 862–63 (N.D. Ohio 2013), is in fact dated November 8, 2024. *See* ECF No. 11, PageID.159; ECF No. 8-2, PageID.82.

- "I worked at two locations for this employer. Cambell Dental as listed above and Allenwood Dental 22500 Allen RD In Woodhaven Michigan. Both owned and operated by same individual." *Id.*
- "On 12/19/2024, I informed my supervising dentist (Dr. G) that I may need an accommodation to receive medical treatment for a qualified disability." *Id.*
- "On 01/09/2024, about three weeks after informing employer about accomodation [sic], I received text message from wife of Dr. G that stated I should no longer treat patients with metal brackets and to refer them to an office outside of the practice." *Id.*
- "After pushing back on this matter with employer, I was subsequently fired on 03/07/2024. They replaced me with someone that was younger and without disability. The time from January to March was used to find a replacement for me which they did." *Id.*

## C.   Procedural History

Plaintiff filed this complaint on June 4, 2025, alleging following counts: (I) discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213; (II) discrimination in violation of Michigan's Persons with Disabilities Civil Rights Act (PDCRA), M.C.L. §§ 37.1101–37.1607; (III) retaliation in violation of the ADA; and (IV) retaliation in violation of the PDCRA. ECF No. 1.

On July 3, 2025, Defendants filed the motion to dismiss. ECF No. 8. Plaintiff responded on July 23, 2025. ECF No. 11. Defendants replied on August 6, 2025. ECF No. 12.

## II. LEGAL BACKGROUND

### A.   Legal Standard for a Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed if it fails to state a claim upon which relief can be granted. To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Id.* at 539 (internal citations and quotation marks omitted); *see also Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56; *see also Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) ("To survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible

that the defendant is liable; they must make it plausible.") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). It is the defendant who "has the burden of showing that the plaintiff has failed to state a claim for relief." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015).

## B.    Exhaustion of Remedies

"A plaintiff seeking to bring employment discrimination claims under the ADA must first exhaust administrative remedies, and failure to properly exhaust is an appropriate basis for dismissal of an ADA action." *Jones v. Nat. Essentials, Inc.*, 740 F. App'x 489, 492 (6th Cir. 2018) (citing *Mayers v. Sedgwick Claims Mgmt. Servs., Inc.*, 101 F. App'x 591, 593 (6th Cir. 2004)). "To properly exhaust administrative remedies under the ADA, a plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged discrimination." *Id.* at 492–93 (citing *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000)).

Thus, "[a]s a general rule, a[n ADA] plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (citing 42 U.S.C. § 2000e–5(f)(1)); *Parry*, 236 F.3d at 309 ("procedures from § 2000e–5 apply to ADA claims" (citing 42 U.S.C. § 12117(a)).

An EEOC charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12; *accord Younis*, 610 F.3d at 361.

7

"[B]ecause aggrieved employees—and not attorneys—usually file charges with the EEOC, their *pro se* complaints are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Younis*, 610 F.3d at 362. Accordingly, "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998). "This principle [is] known as the 'expected scope of investigation test.'" *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004).

## III. DISCUSSION

In their motion to dismiss, Defendants argue that Plaintiff has failed to exhaust his administrative remedies because the November 8, 2024 EEOC Charge of Discrimination (1) "contained *no retaliation* claim" and (2) did not "name Allenwood as a Respondent." ECF No. 8, PageID.74. Thus, "*none* of these alleged acts were contained in his Charge or considered by the EEOC and he has failed to exhaust his administrative remedies for this entire suit." *Id.* Having carefully reviewed the EEOC charge, as well as the allegations in the Complaint, the Court disagrees: Plaintiff has properly exhausted his administrative remedies so that this argument does not support dismissal of the Complaint. The Court addresses these issues in turn.

### A.   Whether Plaintiff Exhausted His Retaliation Claim

Defendants argue that "Plaintiff's Charge claimed only discrimination based on his alleged disability. Plaintiff never indicated that he suffered an adverse employment action as a result of his alleged protected activity." ECF No. 8, PageID.75. Specifically, Defendants highlight that Plaintiff failed to check "Retaliation" in response to the question "Why you believe you were discriminated against?" *Id.*

The Court disagrees.

When determining whether a plaintiff is precluded from bringing suit on a claim, "[t]he determinative inquiry … is whether [the plaintiff] alleged sufficient facts in his EEOC Complaint to put the EEOC on notice of" the claim they are seeking to bring in federal court. *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004).

For instance, in *Dixon*, while the plaintiff "did not check the appropriate box [for a retaliation claim] on the EEOC's Complaint of Discrimination form," the plaintiff alleged in his EEOC Complaint

> that Bob Reutter discriminated against me, causing the Bureau to do the same, because of Race, fictitious information he received from two other agents *and because the Applicant Program was removed from his direct supervision because of continued harassment.*

*Id.* at 217–18. Plaintiff went on to

> describe how, when he was under Reutter's supervision, he complained to SAC Wayne Davis ("Davis") because Reutter had required him and another agent, the "two Black agents handling the Applicant Program," to report to Reutter weekly, which Dixon and his co-worker resented. Dixon stated, "Mr.

9

> Davis took over the [Applicant] program after [redacted name] and I complained about Reutter's continued harassment."

*Id.* at 218 (alterations in original). On these facts, the Sixth Circuit determined "that the factual allegations were sufficient to put the EEOC on notice that Dixon perceived himself to be a victim of retaliation, in addition to race discrimination." *Id.*

The Court concludes that although Plaintiff did not check the box for a retaliation claim, Plaintiff has met the expected scope of investigations test by alleging facts in his EEOC Charge that put the EEOC on notice that Plaintiff perceived himself to be a victim of retaliation, in addition to disability discrimination.

Specifically, Plaintiff alleged that he informed his supervising dentist that he may need an accommodation, that "three weeks after informing employer about accomodation [sic], I received text message from wife of Dr. G that stated I should no longer treat patients with metal brackets," and that "[a]fter pushing back on this matter with employer, I was subsequently fired on 03/07/2024." ECF No. 11, PageID.159.

By alleging such facts, Plaintiff clearly "put the EEOC on notice of his retaliation claim, despite that he did not check the appropriate box." *Dixon*, 392 F.3d at 217.

Defendants argue that "In a similar matter from the Eastern District in 2022, … the Court dismissed Plaintiff's Complaint after

Plaintiff had failed to check the retaliation box on her charge of discrimination and failed to include sufficient information to clearly 'prompt the EEOC to investigate a claim of ADA retaliation.'" ECF No. 8, PageID.75 (citing *Kerwin v. Cmty. Action Agency*, No. 20-13160, 2022 WL 1430976, at *3 (E.D. Mich. May 5, 2022) (Michelson, J.), *aff'd,* No. 22-1510, 2023 WL 3413906 (6th Cir. May 12, 2023)).

However, in *Kerwin*, the court stated that while plaintiff's "failure to check the retaliation box is not dispositive … her charge would not put the EEOC on notice of a retaliation claim." *Kerwin*, 2022 WL 1430976. Here, on the other hand, Plaintiff's allegations were sufficient to put the EEOC on notice of a retaliation claim. *See, e.g.*, ECF No. 11, PageID.159 ("[a]fter pushing back on this matter with employer, I was subsequently fired on 03/07/2024").

Defendants also argue that Plaintiff's allegations in his EEOC charge fail to meet the elements of a claim of retaliation under the ADA. ECF No. 12, PageID.169–70. However, Defendants cites to no case law that establishes that to "put the EEOC on notice of" a claim, *Dixon*, 392 F.3d at 217, a plaintiff must meet the pleading standards for that claim. In any case, Plaintiff's allegations, as contained in the EEOC charge, clearly state a prima facie case for retaliation.

To establish a prima facie case of retaliation, a plaintiff must show that

(1) the plaintiff engaged in activity protected under the ADA;

11

(2) the employer knew of that activity;

(3) the employer took an adverse action against plaintiff; and

(4) there was a causal connection between the protected activity and the adverse action.

*Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014).

Regarding the first element, Plaintiff alleges that he "informed [his] supervising dentist … that [he] may need an accommodation to receive medical treatment for a qualified disability." ECF No. 11, PageID.159. Contrary to what Defendants' argue, alleging that Plaintiff stated that he may need an accommodation for medical treatment for a disability is sufficient to plead that Plaintiff requested an accommodation. *See Mobley v. Miami Valley Hosp.*, 603 F. App'x 405, 413 (6th Cir. 2015) ("We have generally given plaintiffs some flexibility in how they request an accommodation."); *Chaniott v. DCI Donor Servs., Inc.*, 481 F. Supp. 3d 712, 727 (M.D. Tenn. 2020) ("Requests for accommodation are protected acts for the purposes of an ADA retaliation claim." (cleaned up)).

Defendants do not appear to argue that Plaintiff fails to meet the middle two elements of a prima facie retaliation claim. *See* ECF No. 12, PageID.169–70.

Regarding the fourth element, Plaintiff alleges that "about three weeks after informing employer about accomodation [sic], I received text message from wife of Dr. G that stated I should no longer treat patients with metal brackets." ECF No. 11, PageID.159. Then, "[a]fter pushing back on this matter with employer, I was subsequently fired." *Id.* Both

12

the temporal proximity of Plaintiff being told that he should no longer treat a certain type of patients after he requested an accommodation, and the temporal proximity of Plaintiff being "fired" after "pushing back on this matter," sufficiently plead causal connections between protected activity and adverse employment actions.

Accordingly, the Court concludes that Plaintiff has exhausted his administrative remedies as to his retaliation claim. Thus, the Court **DENIES** Defendants' motion to dismiss Plaintiff's retaliation claims.[2]

### B.    Whether Plaintiff Exhausted His Retaliation Claim

Defendants also argue that the November 8, 2024 EEOC Charge of Discrimination contained "no allegations against Allenwood." ECF No. 8, PageID.75. Specifically, Defendants argue that Plaintiff "did [not] name Allenwood as a Respondent." *Id.* at PageID.74.

Plaintiff responds that "dismissal is … inappropriate because Plaintiff intends to prove that Allenwood and Campbell are a single employer and/or joint employers" and that "Dr. Kanas will show in discovery that the two entities share common management, supervision, and operations." ECF No. 11, PageID.127. Thus, Plaintiff argues, this

---

[2] Plaintiff argues that Defendants' motion should be denied on this point because exhaustion of administrative remedies is an affirmative defense on which Defendants bear the burden of proof and that this issue is better suited for the summary judgment stage. ECF No. 11, PageID.128–130. Because the Court concludes that Plaintiff has exhausted his remedies as to his retaliation claim, the Court need not reach these issues.

issue is a fact-intensive inquiry on which it "intends to take extensive written discovery and depositions." *Id.* at PageID.130. Thus, it is more appropriate for summary judgment. *Id.* at PageID.129.

Defendants respond that "[a] motion to dismiss on the basis of an affirmative defense is appropriate where the facts establishing the defense are ascertainable from the allegations of the complaint and conclusively establish the defense." ECF No. 12, PageID.167.

The Court agrees with Plaintiff: this issue is better suited for the summary judgment stage.

Generally, "[a] party may only sue an entity for violating civil rights statutes … if it named the same entity in its prior EEOC charge." *Szoke v. United Parcel Serv. of Am., Inc.*, 398 F. App'x 145, 153 (6th Cir. 2010). However, "[t]here is a limited exception to this general rule when the unnamed party in the EEOC charge has a 'clear identity of interest' with the party actually sued." *Id.* at 153–54. "The 'identity of interest' exception acknowledges the reality that laymen, unassisted by trained lawyers, initiate the process of filing a charge with the EEOC, and accordingly prevents frustration of the remedial goals of Title VII by not requiring procedural exactness in stating the charge." *Romain v. Kurek*, 836 F.2d 241, 245 (6th Cir. 1987).

The Sixth Circuit has "adopted two separate tests to determine when an identity of interest exists." *Szoke*, 398 F. App'x at 154 (citation omitted). "The first test, known as the Seventh Circuit test, requires that

14

a party demonstrate that the unnamed party possessed sufficient notice of the claim to participate in voluntary conciliation proceedings before the EEOC. [The Sixth Circuit has] required that the unnamed party have actual notice of the claim." *Id.* (cleaned up).

The second test, known as the Third Circuit Test, considers four factors:

(1) Whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;

(2) Whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;

(3) Whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party;

(4) Whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* (citation omitted).

"Compliance with the named-party rule is part of a plaintiff's obligation to exhaust her administrative remedies with the EEOC before filing suit" and "[f]ailure to exhaust administrative remedies is an affirmative defense, and the defendant bears the burden of pleading and proving this failure." *Lockhart v. Holiday Inn Exp. Southwind*, 531 F. App'x 544, 547 (6th Cir. 2013) (cleaned up). Nonetheless, the Sixth Circuit is "reluctant to dismiss complaints based on affirmative defenses

at the pleading stage and before any discovery has been conducted." *Id.* (citation omitted). "In fact, [the Sixth Circuit] only address[es] affirmative defenses on Rule 12(b)(6) motions where the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief." *Id.* (cleaned up).

In *Lockhart*, the Sixth Circuit found that plaintiff's own allegations did not show that the failure to exhaust administrative remedies defense existed because plaintiff alleged facts that "may [establish] an identity of interest." *Id.*

*Lockhart* directly addresses the issue present in this case: Plaintiff's allegations show that an identity of interest may exist. In other words, Plaintiff's allegations do not show that Plaintiff failed to exhaust administrative remedies by not complying with the named-party rule because Plaintiff has alleged sufficient facts for the Court to conclude that there may be an identity of interest between the Campbell and Allenwood.

For instance, Plaintiff alleges that "Campbell furnished the instruments, tools, materials, and equipment Dr. Kanas used in his work for Allenwood." ECF No. 1, ¶ 18. Plaintiff's complaint also treats Campbell and Allenwood as two offices with one owner. *See, e.g., id.* ¶ 48 ("On or about January 3, 2022, Kanas started working at Allenwood Dental and Campbell Dental."); *id.* ¶ 51 ("Kanas's orthodontic practice expanded to nearly 200 cases between the two offices."); *id.* ¶ 52 (On

"December 19, 2023, Kanas informed Dr. Robert Ghannam, the owner, about his need for an accommodation related to cancer treatment."); *id.* ¶ 67 (On "March 2024, Dr. Brandon Thompson, a non-disabled orthodontist, began working at Campbell Dental and Allenwood Dental, performing both bracket and aligner orthodontics."). Similarly, the complaint operates under the assumption that Dr. Ghannam and Ms. Moya were acting as the decisionmakers for both Allenwood and Campbell. *See, e.g., id.* ¶ 68 (On "March 7, 2024, Kanas's employment was terminated by Dr. Ghannam and Lara Moya."). Plaintiff also uses the singular "Defendant." *See, e.g., id.* ¶ 77 ("During the time Plaintiff was employed by Defendant …").

Similarly, the November 8, 2024 EEOC Charge of Discrimination, of which the Court may take judicial notice, *see Kovac*, 930 F. Supp. 2d at 862–63, includes the allegation that Plaintiff "worked at two locations for this employer. Cambell Dental [sic] as listed above and Allenwood Dental." ECF No. 11, PageID.159.

Defendants argue that Plaintiff "specifically acknowledged that they are separate entities with different employees" and "stated Defendants are each 'an independent business.'" ECF No. 12, PageID.171. However, it is unclear why the fact that two parties are separate entities affects the analysis under either of the identity-of-interest tests. In fact, given that the Seventh Circuit test inquires into whether the unnamed party has actual notice of the claim, *see Szoke*, 398

17

F. App'x at 154, whether two parties are separate entities is irrelevant provided they both have actual notice. In any case, in context, as described above, Plaintiff's complaint treats Campbell and Allenwood as sharing an identity of interest.

Accordingly, as in *Lockhart*, "the record is insufficiently developed to allow us to conduct the identity-of-interest analyses …. Some … discovery is necessary before it may be determined whether [Allenwood has] a 'clear identity of interest' with the party named in Plaintiff's EEOC charge." *Lockhart*, 531 F. App'x at 547–48 (continuing "[t]herefore, it was error for the district court to have dismissed Plaintiff's Title VII claims at this stage in the litigation").

For similar reasons, the Court declines to consider the extrinsic materials submitted by the parties, *see*, *e.g.*, ECF No. 8-4; ECF No. 11, PageID.145–53, or the arguments relying on these extrinsic materials, *see*, *e.g.*, ECF No. 11, PageID.137–42. In other words, the Court declines to convert the motion into a Rule 56 motion for summary judgment.

Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiff's claims against Allenwood.

### C.   Plaintiff's State Law Claims Against Allenwood

Lastly, Defendants argue that "[a]fter dismissal of all of Plaintiff's federal claims against Allenwood, the Court's only basis for jurisdiction over his claims would be supplemental jurisdiction." ECF No. 8, PageID.77. "[A]fter dismissal of federal claims Court's [sic] usually

18

dismiss the state law claims." *Id.* "Therefore, with Plaintiff's federal claims against Allenwood requiring dismissal for failure to exhaust administrative remedies, Plaintiff's state law claims against Allenwood must be dismissed." *Id.*

However, the Court has denied Defendants' motion to dismiss Plaintiff's claims against Allenwood. Accordingly, there is no reason to dismiss state law claims against Allenwood.

Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiff's state law claims against Allenwood.

## IV.  CONCLUSION

Accordingly, Defendants' motion to dismiss (ECF No. 8) is **DENIED.**

**SO ORDERED.**

Dated: February 18, 2026          s/Terrence G. Berg

HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE